625 S.E.2d 367

**Anna Jean Duncan STUCK, Petitioner Below, Appellee,**

v.

**William Jack STUCK, Respondent Below, Appellant.**

No. 32727.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 2, 2005.

Decided Dec. 1, 2005.

Dissenting Opinion of Justice Davis Dec. 5, 2005.

Charles R. Webb, Esq., Giatras & Webb, Charleston, for Appellant.

Gordon Billheimer, Esq., Billheimer Law Firm, PLLC, Montgomery, for Appellee.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on January 31, 2005. In that order, the circuit court refused to consider an appeal of an order of the Family Court of Kanawha County filed by the appellant and respondent below, William Jack Stuck (hereinafter "Mr. Stuck"), which granted him a divorce from the appellee and petitioner below Anna Jean Duncan Stuck (hereinafter "Ms. Duncan" [1]). In addition to

---

1. The family court order restored Anna Jean Duncan Stuck her former name of Anna Jean Duncan.

granting the parties a divorce, the family court order contained a finding that the parcel of real estate where the parties resided during their marriage was marital property and, therefore, subject to equitable distribution. In this appeal, Mr. Stuck contends that the residential real estate was not marital property since he owned it prior to the marriage, and thus, he seeks a reversal of that portion of the order which granted Ms. Duncan a one-half interest in the property.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order is reversed, and this case is remanded to the circuit court with directions to enter an order remanding the case to the family court for further proceedings consistent with this opinion.

## I.

## FACTS

Mr. Stuck and Ms. Duncan were married on August 19, 2000. At the time of their marriage, Mr. Stuck, a widower, was 78 years old, and Ms. Duncan, a widow, was 70 years old. Both had children from their previous marriages. The day prior to their marriage, the parties executed two prenuptial agreements. Each party's attorney prepared an agreement and both agreements were signed.

After six months of marriage, Mr. Stuck conveyed by deed his premarital residence into the names of both parties as joint tenants with the right of survivorship.[2] The parties had lived at this residence since they were married. On April 1, 2003, the parties separated. Shortly thereafter, Ms. Duncan filed for divorce. The primary issue raised during the divorce proceedings concerned the ownership of the property where the parties resided during their marriage and which was owned prior to the marriage by Mr. Stuck.

On August 4, 2004, a hearing was held in the Family Court of Kanawha County, and the parties presented evidence with regard to the disposition of the subject property. On November 17, 2004, the family court entered an order with the following findings of fact and conclusions of law:

> There were two prenuptial agreements prepared prior to the marriage but the transfer of the residence and the automobile[3] were some time after the marriage and the Court finds that as to these two items the prenuptial agreements have no effect as both agreements contemplate owning and transferring property after the marriage.
>
> The Court does find that the residential real estate is owned by the parties as joint tenants. The court orders that the survivorship relationship be terminated effective with this order. The respondent and petitioner are ordered to effectuate a new deed or deeds in conformity with this order.

(Footnote added).

Subsequently, Mr. Stuck filed an appeal with the circuit court. On January 31, 2005, the circuit court refused the petition for appeal. Mr. Stuck then filed an appeal with this Court.

## II.

## STANDARD OF REVIEW

■ Recently, in *Carr v. Hancock*, 216 W.Va. 474, 476, 607 S.E.2d 803, 805 (2004), we explained that,

> This Court's standard of review for an appeal from a circuit court that reviewed a family court's final order, or refused to consider a petition for appeal to review a family court's final order, is the same. In reviewing a final order entered by a circuit court judge upon a review of, or upon a

---

2. The real estate which is located in Kanawha County was inherited by Mr. Stuck. He began building a house on the property in May 1999. The home was completed approximately nine months before the parties married. According to Mr. Stuck, he paid for the construction of the house with life savings and proceeds from the sale of a house he inherited in California.

3. The automobile referred to by the court was sold by Mr. Stuck after the parties separated. The court determined that the automobile was not a gift after marriage to Ms. Duncan and that Mr. Stuck did not improperly sell the vehicle. Ms. Duncan did not appeal this finding.

refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

*See* W.Va.Code § 51–2A–15(b) (2001). With these standards in mind, we now consider the issues presented in this case.

## III.

## DISCUSSION

■ Mr. Stuck first asserts that the circuit court erred by finding that his separate property became marital property when he executed a deed placing the real estate in both his and Ms. Duncan's names as joint tenants with the right of survivorship. Mr. Stuck maintains that in executing the deed he did not intend to make the property a gift to the marital estate. Rather, the deed was only intended as a probate instrument in the event that he died while married to Ms. Duncan. He wanted her to have a place to live if he passed away first, and he believed Ms. Duncan would provide that upon her death, the property would be inherited by his daughters. Mr. Stuck says that given the existence of the prenuptial agreements, it is clear that he did not intend for the property to be part of the marital estate.

■ In Syllabus Point 4 of the seminal case of *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990), this Court held that:

Where, during the course of the marriage, one spouse transfers title to his or her separate property into the joint names of both spouses, a presumption that the transferring spouse intended to make a gift of the property to the marital estate is consistent with the principles underlying our equitable distribution statute.

We stressed in *Whiting*, however, that "the joint titling of the separate property gives rise only to a rebuttable presumption of gift to the marital estate." 183 W.Va. at 459, 396 S.E.2d at 421. We further noted that, "The presumption may be overcome by a showing that the transferring spouse did not intend to

transfer the property to joint ownership or was induced to do so by fraud, coercion, duress, or deception." *Id.* (Footnote omitted).

In *Burnside v. Burnside*, 194 W.Va. 263, 270, 460 S.E.2d 264, 271 (1995), this Court expanded upon *Whiting* by providing an extensive analysis regarding the type of evidence that is sufficient to rebut the presumption. In *Burnside*, this Court was asked to determine whether the family law master [4] and circuit court erred by finding that Mrs. Burnside had made a contribution to the marital estate when she used separate funds she had inherited to payoff the parties' mortgage on the marital home. This Court concluded that while both the family law master and circuit court had made a finding that Mrs. Burnside did not prove she was under "coercion, duress, or deception" when she paid off the mortgage, they failed to make a specific finding regarding Mrs. Burnside's "intent" to make a gift. Accordingly, the case was remanded for further consideration of the intent aspect of the presumption with guidance as to what type of evidence would be sufficient to rebut the presumption that a gift had been made to the martial estate.

In the case *sub judice*, the family court, like the family law master and circuit court in *Burnside*, found that Mr. Stuck had not proved that he was under "coercion, duress and deception" when he transferred the property. The family court further concluded that even if Mr. Stuck had intended to only transfer the property so that Ms. Duncan would have a place to live should he pass away first, that absent some limitation to that effect in the deed, the real estate had to be deemed marital property. In other words, regardless of Mr. Stuck's intent, the property was part of the marital estate because the deed specified that the property was owned by the parties jointly with the right of survivorship. Clearly, the family court misapplied the law and erred by not considering Mr. Stuck's intent.

■ Pursuant to *Whiting* and *Burnside*, if Mr. Stuck is able to prove that he never intended to make a gift to the marital estate, then the real estate at issue must be deemed

---

4. The family law master system ceased to operate on January 1, 2002, and was replaced by a system of family court judges. *See* W.Va.Code § 51–2A–23 (2001).

his separate property and not be subject to equitable distribution.[5] Therefore, we reverse the final order and remand this case for consideration of the "intent" aspect of the presumption. The family court is directed to make sufficient findings of fact with regard to whether Mr. Stuck intended to make a gift of his separate property to the marital estate. In doing so, the family court should be mindful of the examples set forth in *Burnside* with regard to the type of evidence that is sufficient to overcome the presumption.

■ As his second assignment of error, Mr. Stuck claims that the family court erred by failing to apply the third step in the equitable distribution analysis. We agree. In Syllabus Point 1 of *Whiting*, this Court held that,

> Equitable distribution ... is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in [former] W.Va.Code, 48–2–32 [now W.Va. Code § 48–7–103 (2001) ].[6]

(Footnote added). In this case, it is clear that the family court did not complete the third step of the equitable distribution process. In fact, the family court's order states, "This court, under the circumstances and controlling law stated, does specifically not rule on the equitable aspects of the transfer." The family court order then concludes that "the residential real estate is owned by the parties as joint tenants."

■ In Syllabus Point 2, in part, of *Whiting*, this Court held that,

> Unless the parties have made a joint stipulation or property settlement agreement,[7] under Rule 52(a) of the West Virginia Rules of Civil Procedure the circuit court [and family court] is required to make findings of fact and conclusions of law in its final order which reflect each step of the equitable distribution procedure.

(Footnote added). Moreover, Syllabus Point 5 of *Burnside* mandates:

> "In any order making a division of marital property, the trial court ... must set out in detail its findings of fact and conclusions of law, and the reasons for dividing the property in the manner adopted. [Former] W.Va.Code § 48–2–32(f) (1986) [now W.Va.Code § 48–7–106 (2001).]." Syllabus Point 2, *Somerville v. Somerville*, 179 W.Va. 386, 369 S.E.2d 459 (1988).

Accordingly, upon remand, should the family court determine that the subject property is part of the marital estate, then the court must complete the remaining steps of the equitable distribution process[8] and set forth adequate findings of fact and conclusions of law which explain the reasons for dividing the property in the manner adopted.[9]

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order dated January 31,

---

5. We note that W.Va.Code § 48–5–609 (2001) provides:

> Upon ordering a divorce, the court has the power to award to either of the parties whatever of his or her property, real or personal, may be in the possession, or under the control, or in the name, of the other, and to compel a transfer or conveyance.

6. In 2001, the West Virginia Legislature recodified the West Virginia Domestic Relations Act. *See* W.Va.Code § 48–1–101 (2001).

7. Obviously, the parties made no stipulation or property settlement agreement with regard to the real estate at issue.

8. According to Mr. Stuck, the second step, which concerns the valuation of the martial property, is not an issue in this case.

9. We note that:

> In the absence of a valid agreement, the trial court in a divorce case shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to fault, based on consideration of certain statutorily enumerated factors, including: (1) monetary contributions to marital property such as employment income, other earnings, and funds which were separate property; (2) non-monetary contributions to marital property, such as homemaker services, child care services, labor performed without compensation, labor performed in the actual maintenance or improvement of tangible marital property, or labor performed in the management or investment of assets which are marital property; (3) the effect of the marriage on the income-earning abilities of the

2005, is reversed, and this case is remanded to the Circuit Court of Kanawha County with directions to enter an order remanding this case to the Family Court of Kanawha County for further proceedings consistent with this opinion.

Reversed and remanded with directions.

Justices DAVIS and STARCHER dissent and reserve the right to file dissenting opinions.

DAVIS, J., dissenting:

(Filed Dec. 5, 2005)

The majority's opinion remands this case to afford the husband another opportunity to prove that which he failed to prove the first time. I disagree with the majority's decision to remand the case to consider the intent of the husband when he offered no evidence that would overcome the presumption of a gift of the premarital residence. The circuit court granted Ms. Duncan one-half interest in the premarital residence of Mr. Stuck. Based on the facts of this case, I would affirm the circuit court's decision.

The facts of this case show that one day prior to their marriage, the parties entered into identical prenuptial agreements that protected the separate property they had acquired prior to marriage. Six months after the parties' marriage, Mr. Stuck conveyed by deed his premarital residence into the names of both parties as joint tenants with rights of survivorship. We have previously held:

Where, during the course of the marriage, one spouse transfers title to his or her separate property into the joint names of both spouses, a presumption that the transferring spouse intended to make a gift of the property to the marital estate is consistent with the principles underlying our equitable distribution statute.

Syl. pt. 4, *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990). Subsequently, we elaborated on our holding when we stated "[t]his presumption is rebuttable only by

parties, such as contributions by either party to the education or training of the other party, or foregoing by either party of employment or education; or (4) conduct by either party that lessened the value of marital property. [For-

clear, cogent, and convincing evidence that a gift was not intended or that the transaction under scrutiny was the result of coercion, duress, or deception." Syl. pt. 3, in part, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995). Further,

The presumption of a gift to the marital estate may not be rebutted by evidence that merely reflects the motivation for making the gift or an uncommunicated and subjective state of mind of the transferring spouse or that, when viewed alone, can be considered inconsistent with the intent to maintain the property as separate.

Syl. pt. 4, *id.*

The majority's Opinion is this case states: "Pursuant to *Whiting* and *Burnside*, if Mr. Stuck is able to prove that he never intended to make a gift to the marital estate, then the real estate at issue must be deemed his separate property and not be subject to equitable distribution." No. 32727, slip op. at 5 (December 1, 2005) (per curiam). While I agree with the majority's statement, I disagree with its application to the facts of this case because Mr. Stuck did not prove that he never intended to make a gift to his wife. By deed dated March 14, 2001, Mr. Stuck clearly and unequivocally expressed his intent that his premarital residence, which was previously his separate property, instead be marital property.

"Most courts accept that separate property can be transmuted into marital property if the owning spouse designates joint title[.]" *Burnside*, 194 W.Va. at 266, n. 3, 460 S.E.2d at 267, n. 3 (internal citations omitted). "There is general agreement that the transfer of separately owned property into joint ownership changes the character of the ownership interest in the property so transferred from nonmarital to marital so that the property is subject to equitable distribution." *Whiting*, 183 W.Va. at 457, 396 S.E.2d at 419 (internal citations omitted). In its discussion, this Court in *Burnside* reasoned that evidence of the reasons for a gift does not refute the fact that a gift was made in the first place. Therefore, the fact that Mr.

mer] W.Va.Code § 48–2–32(c) (1986) [now W.Va.Code § 48–7–103 (2001)].

Syllabus Point 1, *Somerville v. Somerville*, 179 W.Va. 386, 369 S.E.2d 459 (1988).

Stuck claimed the conveyance was for purposes of providing his wife a place to live in case of his death, absent more, is not enough to rebut the presumption of a gift. The family court judge found the deed to be the controlling document, and found that the wife had an equitable interest in the residence, and further found that the witness testimony offered by Mr. Stuck was an attempt to alter the clearly written deed. Thus, the family court and the circuit court found that the premarital estate was gifted by Mr. Stuck to Ms. Duncan and should be equitably distributed. Applying our deferential standard of review, I do not believe this finding is an abuse of discretion or clearly erroneous.

For the reasons stated, I dissent. I am authorized to state that Justice STARCHER joins me in this dissenting opinion.